UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GOVERNOR GREG ABBOTT, in his official capacity as Governor of the State of Texas, and<br><br>GOVERNOR MIKE DUNLEAVY, in his official capacity as Governor of the State of Alaska<br>    *Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, et al.,<br>    *Defendants*. | No. 6:22-cv-00003-JCB |

## GOVERNOR DUNLEAVY'S BRIEF IN SUPPORT OF GOVERNOR ABBOTT'S MOTION FOR PRELIMINARY INJUNCTION

## I.    INTRODUCTION

The federal government has aptly explained the limits on its authority over the Guard:

The regulations and orders promulgated pursuant to 32 U.S.C. § 110 establish systems, processes, and standards for uniformity among the States' National Guards. *The States* are then responsible for their *execution and day-to-day administration* in accordance with the federal government's guidance. The statute *does not authorize the federal government to step in and take over the state's daily administration duties* if it determines that the State National Guard is doing something wrong or fails to meet the established standards. *To extend that power to the federal government would completely undermine the state's authority to administer their own affairs while in a Title 32 (non-federal) status*.[1]

Here, Defendants' Enforcement Memoranda[2] does exactly what the Unites States previously said was prohibited – it purports to extend the power over the National Guard's daily administration to the federal government.

---

[1]    Br. of the United States of America, *Assn. of Civilian Techs., Inc. v. United States*, No. 09-5153, 2009 WL 6506408, at *17 (D.C. Cir. Dec. 9, 2009) (emphasis added).

[2]    Governor Dunleavy incorporates by reference Governor Abbott's definition of "Enforcement Memoranda."

Like Governor Abbott, Governor Dunleavy believes vaccines should be voluntary, not mandatory, and his orders reflect that belief. Nevertheless, the Enforcement Memoranda would require Governor Dunleavy to enforce Defendants' mandates by imposing harsh consequences on non-federalized members of the Guard who refuse to be vaccinated. As a result, the Enforcement Memoranda undermines the State of Alaska's authority to administer its own affairs while Guardsmen are in non-federal status, and it unlawfully usurps Governor Dunleavy's authority as Commander in Chief of the Alaska National Guard.

Accordingly, Governor Dunleavy files this brief in support of Governor Abbott's Motion for Preliminary Injunction and requests that any injunction the Court might issue likewise enjoin Defendants from applying the Enforcement Memoranda to non-federalized members of the Alaska National Guard.

## II.    ARGUMENT AND AUTHORITIES

### a.    Dual Structure of the National Guard.

"The National Guard is a 'hybrid' component of the United States armed forces in that it performs both federal and state functions."[3] "During times of national emergencies, the President may mobilize the National Guard, putting it in federal duty status and making its members available for military duties normally assigned to the active armed forces and armed forces reserves."[4]

During non-emergency times, the Guard is led by the state adjutants general.[5] "The state adjutants general answer to the governors of their respective states, who in turn, have the authority

---

[3]     *Jentof v. U.S.*, 450 F.3d 1342, 1343 (Fed. Cir. 2006).

[4]     *Id.*

[5]     *Id.*

to call upon members of the National Guard in times of domestic emergencies or need."[6]

The Guard's dual structure has existed since the earliest days of the United States. For example, the Militia Clause of the United States Constitution expressly reserves for the states the authority to train and discipline the militia.[7]

The statutory scheme for the National Guard echoes the same division of authority. "Title 10 provides with respect to the Army National Guard of the United States that, when not on active duty, its members 'shall be administered, armed, equipped, and trained in their status as members of the Army National Guard.'"[8] "Title 32 provides, in turn, that when not called to federal duty by the President…a state National Guard is under the command of the state Governor and the State Adjutant General, who is appointed by the Governor…"[9]

### b.    Title 10 Status, Title 32 Status, and State Active Duty.

"[M]embers of the State Guard…must keep three hats in their closets – a civilian hat, a state militia hat, and an army hat – only one of which is worn at any particular time."[10] What "hat" a member has on turns on whether the member is in: "Title 10 Status," "Title 32 Status," or "State Active Duty."

---

[6]      *Id*.

[7]      *Gilligan v. Morgan*, 413 U.S. 1, 6 (1973) (stating that the "militia" in the Militia Clause of the U.S. Constitution is the National Guard); *see also Ass'n of Civilian Technicians, Inc., v. United States*, 603 F.3d 989, 992 (D.C. Cir. 2010); U.S. Const. art. 1, § 8, cl 16 (granting Congress the power to "provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States" but "*reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress*.") (emphasis added).

[8]      *Ass'n of Civilian Technicians, Inc*., 603 F.3d at 993 (quoting 10 U.S.C. § 10107).

[9]      *Id*. "This command falls within a federal framework established by Congress for the organization, discipline and governance of the states' National Guard in recognition that they are part of the force that may be needed for national security." *Id*. "If a State fails timely to comply with or enforce a requirement or regulation, it risks loss of federal benefits, 'as the President may prescribe,' namely the loss of 'money or other aid or benefit or privilege authorized by law.'" *Id*. (quoting 32 U.S.C. § 108).

[10]     *Perpich v. Dept. of Defense*, 496 U.S. 334, 348 (1990).

### i.     Title 10 Status.

Title 10 of the United States Code determines when the President or the Secretary of Defense is permitted to "federalize" the National Guard forces. The federalization of members of the National Guard status is commonly known as "Title 10 status."

Guardsmen in Title 10 status are considered in "actual service of the United States" when a federal order is published stating the legal authority for the order and its duration.[11] Once a Title 10 order is issued, the President becomes the Commander in Chief of federalized Guardsmen, and they are subject to the authority of the federal government, including the Uniform Code of Military Justice (UCMJ).

### ii.     Title 32 Status.

A Guardsman who is under state command, but whose position is federally funded, is in "Title 32 status." Title 32 status is authorized by the First Militia Clause, which authorizes federal use of the National Guard while under continuing state control to "execute the Laws of the Union, suppress insurrections and repel Invasions."[12]

National Guardsmen who are in "Title 32 status" are not in "actual Service" of the United States. Rather, Title 32 dictates that this actual service only occurs once the Guardsmen are "ordered to active Federal duty." 32 U.S.C. § 102. Accordingly, each State's respective Governor, not the President, is the sole commander in chief of Guardsmen on Title 32 status.[13]

### iii.     State Active Duty.

State Active Duty refers to guard status when activated by a state's governor; accordingly,

---

[11]     *See, e.g.*, 32 U.S.C. § 325; 10 U.S.C. § 12301; *Perpich*, 496 U.S. at 343–44.

[12]     U.S. Const. art. I, § 8.

[13]     *Ass'n of Civilian Technicians, Inc.*, 603 F.3d at 993. Further, National Guardsmen serving under Title 32 are subject to state military codes, not the UCMJ.

when a Guardsmen may be called to State Active Duty is governed by state law. For example, Alaska Statute 26.05.070 describes the circumstances under which the Governor of Alaska may order the Alaska National Guard (AKNG) into active state service.[14]

### c.   The Federal Government's Limited Authority Over Daily Administration of the Guard.

The federal government's authority over a State's National Guard and individual Guardsmen not in the "actual Service" of the United States is restricted.

The President "shall prescribe regulations, and issue orders necessary to organize, discipline, and govern the National Guard." 32 U.S.C. § 110.[15] But "*[t]he States* are then responsible for their execution and the *day-to-day administration* in accordance with the federal government's guidance."[16]

Section 110 "*does not* authorize the federal government to step in and take over the state's daily administration of duties if it determines that the State National Guard is doing something wrong or fails to meet the established standards."[17] "To extend that power to the federal government would completely undermine the states' authority to administer their own affairs while in a Title 32 (non-federal) status."[18]

---

[14]     The Governor may call the National Guard to State Active Duty – referred to as "Active State Service" under state law – "[i]n the event of war, disaster, insurrection, rebellion, tumult, catastrophe, wildland fire, invasion, or riot; or if a mob or body of men act together by force with intent to commit a felony or to offer violence to persons or property, or by force and violence to break and resist the laws of the state, or the United States; or in the case of imminent danger of the occurrence of any of these events; or whenever responsible civil authorities fail to preserve law and order, or protect life and property, or the governor believes that failure is imminent." Alaska Stat. § 26.05.070.

[15]     This statutory grant of authority mirrors the authority granted to Congress in the Second Militia Clause.

[16]     Br. of the United States of America, *Assn. of Civilian Techs., Inc. v. United States*, No. 09-5153, 2009 WL 6506408, at *17 (D.C. Cir. Dec. 9, 2009) (emphasis added).

[17]     *Id*. (emphasis added).

[18]     *Id*.

"If a State National Guard fails to comply with the regulations, or orders, issued pursuant to 32 U.S.C. § 110, then the federal government has *only one remedy*, to withhold funds under 32 U.S.C. § 108."[19]

### d. Structure and Command of the AKNG.

Under the Alaska Constitution, Governor Dunleavy "is commander-in-chief of the armed forces of the State [the AKNG]."[20] As commander-in-chief, Governor Dunleavy has the authority to order the Guard into state service to execute the laws, suppress or prevent insurrection or lawless violence, or repel invasion.[21]

Governor Dunleavy's chain of command is exercised through his adjutant general,[22] who is required by statute to carry out the policies of the governor in military affairs.[23] Further, "[t]he adjutant general represents the governor and shall act in conformity with the governor's instructions."[24] In carrying out his or her duties, the adjutant general "shall adopt and publish orders and regulations not contrary to law that in the adjutant general's judgment are necessary to bring the organizations, armament, equipment, and discipline of the organized militia to a high degree of efficiency."[25]

---

[19]     *Id*. (emphasis added).

[20]     Alaska Const. Art. III, § 19; *see also* Alaska Stat. § 26.05.060 ("The governor as ex officio commander of the militia of the state has command of the Alaska National Guard and the Alaska Naval Militia while they are not in active federal service. The governor may adopt necessary regulations for them.").

[21]     Alaska Const. Art. III, § 19; *see also* Alaska Stat. § 26.05.070 ("In the event of war, disaster, insurrection, rebellion, tumult, catastrophe, [or] wildland fire…the governor may order the organized militia or any part of it, into active state service….").

[22]     Alaska Stat. §§ 26.05.160, 170.

[23]     *Id*. at § 26.05.170.

[24]     *Id*. In carrying out the governor's orders, the adjutant general exercises control of the military department of the State of Alaska, which is comprised of the AKNG, the Alaska Naval Militia, and the Alaska State Defense Force. *Id*. at §§ 26.05.030, 170.

[25]     *Id*. at § 26.05.190.

e. **Governor Dunleavy's Order and Alaska Law.**

Governor Dunleavy believes vaccines should not be mandatory, and his orders reflect that belief. For example, Governor Dunleavy's Administrative Order No. 325 recognizes that imposing vaccine mandates on National Guard members without adequate protections in place for individuals with religious objections jeopardizes those members' constitutional rights, as well as their rights under Alaska law.  Accordingly, the Order directs that no state agency (which would include the Department of Military and Veterans Affairs) participate with a federal agency, or spend state funds to participate in, or further any action by a federal agency that infringes on the constitutional rights of Alaskans.

Governor Dunleavy's Order is consistent with Alaska law, and it reflects the fundamental right to privacy enshrined in the Alaska Constitution, which the Alaska Supreme Court has held includes the right to make decisions about medical treatment.[26] The Order further reflects an Alaska law that broadly protects all Alaskans' rights to object to COVID-19 vaccines "based on religious, medical, or other grounds," and that forbids requiring an individual to provide justification or documentation to support the individual's decision to decline a COVID-19 vaccine.[27]

f. **The Enforcement Memoranda Conflict with Governor Dunleavy's Orders and Undermine his Authority as Commander-in-Chief.**

As set forth more fully in Governor Abbott's brief, the Enforcement Memoranda effectively require termination of all members of the AKNG, including non-federalized

---

[26]    *See Huffman v. State*, 204 P.3d 339, 346 (Alaska 2009) ("We now hold that the right to make decisions about medical treatments for oneself or one's children is a fundamental liberty and privacy right in Alaska.").

[27]    2021 Alaska Sess. Laws ch. 2, § 17.

Guardsmen, who remain unvaccinated by the respective deadlines.[28] The memoranda have one aim – to step in and compel *state* governors to force Guardsmen under *state* command and subject to punishment under *state* standards to submit to orders by the *federal* military officials on penalty of punishment under *federal* standards. As a result, the Enforcement Memoranda are in conflict with Governor Dunleavy's Orders as the Commander-in-Chief, as well as Alaska law.

g.   **Governor Dunleavy is Likely to Succeed on the Merits.**

Like Governor Abbott, Governor Dunleavy is likely to succeed on the merits because the Enforcement Memoranda exceed the constitutional and statutory limits on Defendants' powers.[29] As the federal government explained, its only remedy when a State fails to comply with a federal standard established under Section 110 is to withhold funds. It is not permitted to step in and commandeer the daily administration of the Guard because that would "completely undermine"[30] the states' authority to administer their own affairs while Guardsmen are in Title 32 status.

h.   **Governor Dunleavy is Likely to Suffer Irreparable Harm Absent an Injunction.**

Governor Dunleavy will likely suffer irreparable harm absent and injunction because the Enforcement Memoranda conflict with and purport to override Governor Dunleavy's Order, which his adjutant general is statutorily required to carry out, as well as his authority as commander-in-chief of the AKNG.[31] As a result, the Enforcement Memoranda will irreparably harm Governor

---

[28]   *See, e.g.*, Dkt. 24, p. 5 (and exhibits cited therein).

[29]   Governor Dunleavy incorporates by reference Governor Abbott's argument and authorities regarding likelihood of success on the merits.

[30]   *See* Note 1, *supra*.

[31]   "The adjutant general represents the governor and shall act in conformity with the governor's instructions." Alaska Stat. § 26.05.170. The adjutant general "shall adopt and publish orders and regulations not contrary to law that in the adjutant general's judgment are necessary to bring the organizations, armament, equipment, and discipline of the organized militia to a high degree of efficiency." *Id*. at § 26.05.190.

Dunleavy's authority to administer the Guard on a daily basis, discipline Guardsmen, and issue and enforce his own orders, including orders meant to ensure the AKNG adheres to Alaska law.

### i.      The Equities and Public Interest Favor and Injunction.

Non-federalized members of the AKNG play a crucial role in keeping Alaskans safe, from combatting wildfires and earthquakes to search-and-rescue missions in some of the most rugged terrain in the country. Forcing Governor Dunleavy to comply with the Enforcement Memoranda will undoubtedly lead to a reduction in force and would hamper the AKNG's operations.

## III.      CONCLUSION

For the reasons set forth herein and in Governor Abbott's Brief, Governor Dunleavy requests that any injunction the Court might issue likewise enjoin Defendants from applying the Enforcement Memoranda to non-federalized members of the Alaska National Guard

Dated: February 23, 2022                                        Respectfully submitted,

TREG R. TAYLOR                                          /s/ Christopher A. Robison
Attorney General of Alaska                      Christopher A. Robison
                                                                  Texas Bar No. 24035720
CORI M. MILLS                                            Assistant Attorney General
Deputy Attorney General of Alaska          Alaska Department of Law
                                                                  1031 W. 4th Avenue, Suite 200
                                                                  Anchorage, Alaska 99501-1994
                                                                  chris.robison@alaska.gov
                                                                  T: (907) 269-5100/F: (907) 276-3697

                                                                  COUNSEL FOR GOVERNOR DUNLEAVY

### CERTIFICATE OF SERVICE

A true and correct copy has been served on all counsel of record via the Court's ECF/PACER system. A copy has also been served on counsel for the Defendants via e-mail to Zachary Avallone at Zachary.A.Avallone@usdoj.gov and James Gillingham at James.Gillingham@usdoj.gov.

                                                                  /s/ Christopher A. Robison
                                                                  Christopher A. Robison