IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GOVERNOR GREG ABBOTT, in his official capacity as Governor of the State of Texas, <br><br> and <br><br> GOVERNOR MIKE DUNLEAVY, in his official capacity as Governor of the State of Alaska, <br>    *Plaintiffs*, <br><br> v. <br><br> JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*, <br>    *Defendants*. | No. 6:22-cv-3-JCB |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

"The saying that generals always fight the last war is familiar," *Al-Bihani v. Obama*, 590 F.3d 866, 882 (D.C. Cir. 2010) (Brown, J., concurring), and the Defendants have proven that saying true by pretending like this case presents the same claims as were rejected in *Oklahoma v. Biden*, No. 5:21-cv-1136, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021). Governor Abbott and Governor Dunleavy parsed the relevant constitutional text to argue that "[t]he Second Militia Clause leaves the 'governing' to the Governor until his Guardsmen are lawfully federalized." Abbott Br. at 2 (quoting U.S. Const. art. I, § 8, cl. 16). The opinion out of Oklahoma said nothing about this novel *governing* argument—and neither do the Defendants in their response. No matter what they might now say in a forthcoming sur-reply, the Defendants cannot undo this crucial forfeiture at the preliminary-injunction stage. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 850 F. App'x 213, 217 (5th Cir. 2021) (per curiam) ("[A] new argument cannot be raised for the first time in a reply brief, let alone a sur-reply.").

The Defendants make no argument that they have lawfully federalized the Texas or Alaska National Guards, and they do not contend that the President wields any commander-in-chief power over Governor Abbott or Governor Dunleavy. Instead, the Defendants ignore the text of the U.S. Constitution and ask the Court to eviscerate gubernatorial command of non-federalized Guardsmen. The modern militias are, and must remain, under the State's control unless and until its Guardsmen are lawfully federalized by the President himself. Under the guise of public health and military readiness, the Defendants would have this Court render that control meaningless. The Court should reject that invitation and grant the Plaintiffs' preliminary injunction.

I. **The Plaintiffs Are Likely to Succeed on the Merits.**

The Defendants proceed from the premise that the Plaintiffs challenge the mere imposition, pursuant to 32 U.S.C. § 110, of an additional readiness requirement. *See* Opp. at 7; *cf. Oklahoma*, 2021 WL 6126230, at *7. But the Plaintiffs expressly disclaimed any such contention. *See* Abbott Br. at 8–9. The Plaintiffs' *governing* argument in this Court was derived from their close reading of the Second Militia Clause's text and context. *See, e.g., id.* at 3–4, 7–8, 11–12. Yet the Defendants

1

do not bother to submit a competing interpretation of the word "governing" in their response, which makes just two passing references to that concept. *See* Opp. at 8 (quoting U.S. Const. art. I, § 8, cl. 16 and 32 U.S.C. § 110). By the time they file a sur-reply, though, it will be too late for the Defendants to rebut the Plaintiffs' central argument for likely success on the merits. Nor can the Defendants belatedly explain away the federal government's long-held position, expressed in decades' worth of briefs, that it is powerless to command the actual operations of a State's militia through direct punishment of non-federalized Guardsmen. *See* Abbott Br. at 13 (collecting concessions in briefs dating back to 1965).

At most, the Defendants can use their sur-reply to defend against a new *officering* argument that their response has provoked. *See, e.g.*, *Hanson Pipe & Prods., Inc. v. Bridge Techs., LLC*, 351 F. Supp. 2d 603, 614 (E.D. Tex. 2004) (explaining that a sur-reply is "appropriate" for countering new arguments in a reply). The Second Militia Clause "reserv[es] to the States respectively, the Appointment of the Officers." U.S. Const. art. I, § 8, cl. 16; *see also* The Federalist No. 29 (Alexander Hamilton). The Defendants threaten to violate this federalism guarantee through the eventual withdrawal of federal recognition from Texas's and Alaska's officers, *see* Opp. at 10 n.1, 17, which will yield their automatic discharge from the Texas and Alaska National Guards under 32 U.S.C. § 324(a)(2). Commentators have long questioned the constitutionality of this statutory provision. *See, e.g.*, Frederick Bernays Wiener, *The Militia Clause of the Constitution*, 54 Harv. L. Rev. 181, 201, 211–12 (1940). Surprisingly enough, the Defendants have now turned a veiled threat from the Enforcement Memoranda into a proud boast. *Cf.* Mot. for Prelim. Inj. Exh. 10.

The Defendants further attempt to defend their Enforcement Memoranda by misconstruing state law. *See* Opp. at 11-12 (invoking Tex. Gov't Code ch. 437 as against members of the Texas National Guard who are already enlisted or appointed). But they ignore Governor Abbott's Executive Order GA-39, which provides with the force and effect of state law that every non-

federalized Guardsman in Texas is prohibited, by an order from his commander-in-chief, from compelling any individual to receive a COVID-19 vaccine. *See* Mot. for Prelim. Inj. Exh. 2.[1]

## II. Texas and Alaska Are Suffering Irreparable Injury.

Governor Abbott and Governor Dunleavy are each suffering an injury to their authority, granted to them by the voters and the constitutions of their respective States, to serve as the commander-in-chief in Texas and Alaska, respectively. And with respect to the individual Guardsmen under Governor Abbott's and Governor Dunleavy's commands, they too suffer an irreparable injury when they are "put to a choice between their job(s) and their jab(s)." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Similarly, Governor Abbott and Governor Dunleavy cannot protect the religious freedoms of their Guardsmen, and Guardsmen themselves risk having their religious beliefs ignored. *See, e.g.*, *U.S. Navy Seals 1-26 v. Biden*, -- F.4th --, 2022 WL 594375 (5th. Cir. Feb. 28, 2022) (describing systematic denial of religious exemptions within the Navy pursuant to President Biden's vaccine mandate). Moreover, "[w]ithout a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall.'" *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 498 (2010) (quoting The Federalist No. 70 (Alexander Hamilton)). Accordingly, the constitutional violations at issue here necessarily involve harm that cannot be remedied.

---

[1] *See also* Governor Dunleavy's Admin. Order 325 (recognizing that imposing vaccine mandates on National Guard members without adequate protections in place for individuals with religious objections jeopardizes the constitutional rights of individual Alaskans and directing, among other things, that no state agency participate with a federal agency, or spend state funds to participate in, or further any action by a federal agency that infringes on the constitutional rights of Alaskans); 2021 Alaska Sess. Laws ch. 2, § 17 (protecting all Alaskans' rights to object to COVID-19 vaccines "based on religious, medical, or other grounds" and prohibiting requirements that an individual provide justification or documentation to support the individual's decision to decline a COVID-19 vaccine).

The Enforcement Memoranda also have real-world impact. The Defendants dismiss out of hand the effect that a loss of significant numbers of Guardsmen would have in Texas. They conclude that these losses are merely speculative and that the potential reductions in force are "less than average annual attrition" or "months away." Opp. at 18. It is true that the precise number of Guardsmen who will leave service as a result of the Enforcement Memoranda is not known, but the evidence submitted by Texas demonstrates that *any* additional losses above normal attrition will, at a minimum, result in at least a temporary reduction in readiness that could only be overcome through significant efforts in additional recruiting. *See, e.g.*, Decl. of Maj. Gen. Norris (ECF No. 25-7). And it is no solution to put Guardsmen on a state-funded status. Many Guardsmen want the pride, training, and benefits of serving their country. Governor Abbott and Governor Dunleavy can retain these Guardsmen while still meeting Texas's and Alaska's federal military commitments, but not if they are forced to obey the Enforcement Memoranda and govern their troops in a manner dictated by federal policymakers.

In any event, the harm inflicted by the Enforcement Memoranda on each of the Plaintiffs is a legal harm to his authority as commander-in-chief. It does not require evidence of the vaccine requirement's impact on the Guard, and Alaska is similarly situated to Texas for that reason. *See generally Maryland v. King*, 567 U.S. 1301, 1303 (2012); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("Prohibiting the State from enforcing a statute properly passed . . . would irreparably harm the State."); *State v. Nelson*, No. 8:21-cv-2524, 2021 WL 6108948, at *14-15 (M.D. Fla. Dec. 22, 2021) (finding substantial likelihood of irreparable harm to Florida's sovereign interest absent a stay of the federal contractor vaccine requirement); *Texas v. Becerra*, No. 5:21-cv-300, 2021 WL 6198109 (N.D. Tex. Dec. 31, 2021) (enjoining Head Start vaccine requirement finding injury to state's sovereign interest is "necessarily" irreparable because the "clear effect of the Rule is to inhibit Texas's sovereign policy-making and, importantly, enforcement powers"). Moreover, injunctions blocking other vaccine requirements have extended to all of the States that were plaintiffs in the litigation, even when certain States failed to provide evidence of irreparable harm. *See, e.g.*, *Missouri v. Biden*, No. 4:21-cv-1300, 2021 WL 5998204 (E.D. Mo. Dec. 20, 2021)

(injunction blocking federal contractor vaccine requirement covered Arkansas, Montana, and South Dakota, despite the fact that they submitted no evidence in support of the motion).

Contrast these imminent harms with the speculative effects on readiness of COVID-19, and it is clear that the Defendants' justifications for this unconstitutional mandate are severely lacking. The Defendants' own evidence shows that COVID-19 among active-duty service members results in astonishingly few hospitalizations or deaths. *See, e.g.*, Decl. of Col. Rans at 11-13, ¶ 11 (table and figure) (ECF No. 33-4). Guardsmen in Texas and Alaska have been at the front lines of the COVID-19 pandemic since the beginning, and they know better than anyone how to protect themselves against this disease. More important, Governor Abbott and Governor Dunleavy know best how to ready their forces to meet any challenge. And unlike the Defendants, Governor Abbott and Governor Dunleavy have taken into account the immediate impact of departures in significant numbers by those Guardsmen who choose not to get vaccinated, rather than simply focusing on a dogmatic view of mandatory vaccination. Guardsmen should not be put to a choice between conscience and career, and certainly not by a President who is not their commander-in-chief.

The Defendants further contend that the Plaintiffs' delay in seeking a preliminary injunction undermines the argument that the Defendants are inflicting irreparable harm. This argument is premised on the suggestion that the full extent of the Defendants' vaccine mandate has been known since August 24, 2021. *See* Opp. at 28. But this suggestion is simply false. Although an initial announcement may have occurred in August 2021, the Defendants themselves admit it was not until November 30, 2021 that they made clear they are purporting to extend the COVID-19 vaccine mandate to non-federalized Guardsmen who are not in their chain of command. *See* Decl. of Col. Mulcahy ¶ 10 (ECF No. 33-1). The Air Force did not issue its "specific regulatory guidance" until December 7, 2021. *Id.* ¶ 11. And the Army issued guidance on January 27, 2022—after the Original Complaint was filed in this matter. *Id.* ¶¶ 15-16 & Ex. B. It was not until January 27, 2022 that Secretary Austin even responded to Governor Abbott's letter condemning the purported COVID-19 vaccine mandate. *See* Mot. for Prelim. Injunction Ex. 10 (ECF No. 25-10). Governor Abbott sought a preliminary injunction less than two weeks later. Accordingly, any delay in bringing this

request for a preliminary injunction is attributable not to the Plaintiffs sleeping on their rights, but to the Defendants' disorganized implementation and delayed issuance of the Enforcement Memoranda.

The Plaintiffs acted with all appropriate diligence in seeking a preliminary injunction, and the Defendants cannot rely on their own moving goalposts to undermine their request. The cases which establish that delay can undermine a preliminary injunction motion require both an insufficient explanation and a "substantial period of delay." *See, e.g.*, *GoNannies, Inc. v. GoAuPair, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). Here, however, the explanation is the Defendants' own conduct, through their confusing web of Enforcement Memoranda and dilatory tactics in issuing specific guidance or responding to Governor Abbott's letter. And the period of delay, if any, is on the order of weeks, not months. *Cf. Weight Watchers Int'l v. Lugino's, Inc.*, 423 F.3d 137, 145 (2d Cir. 2005) (noting that delays of four, five, and seven months have been acceptable). Accordingly, the Court should give no weight to Defendants' argument regarding delay.

### III. The Remaining Factors Weigh in Favor of the Plaintiffs.

The Defendants' arguments on the remaining factors are again skewed by their misunderstanding of the Plaintiffs' claims. The Plaintiffs do not contest that President Biden could impose a vaccine requirement on federalized troops and do not argue that President Biden is without recourse if Governor Abbott and Governor Dunleavy do not follow the Enforcement Memoranda. But the Defendants cannot unconstitutionally usurp the lawful chain of command within each State's military forces simply because it is more convenient for them to do so. If President Biden wants to subject the Texas National Guard to a federal vaccine mandate, he cannot hide behind Secretary Austin or commandeer Governor Abbott. President Biden must own his decision, with all the accompanying political and pecuniary costs, by federalizing the Texas National Guard or by defunding it "as the President may prescribe." 32 U.S.C. § 108. He has not

done so, and therefore he cannot inflict the specific and detailed punishments that the Enforcement Memoranda provide.

When the Plaintiffs' claims are properly understood, it is clear that a preliminary injunction is in the public interest. The Defendants would have this Court ride roughshod over the "particular balance" that "the Framers expressly struck" "between federal interests and state autonomy in the military context." Evan H. Caminker, *State Sovereignty and Subordinacy: May Congress Commandeer State Officers to Implement Federal Law?*, 95 Colum. L. Rev. 1001, 1032 n.120 (1995) (cleaned up). President Biden would no doubt prefer it if Guardsmen wore only one "hat" rather than several and were accountable only to him. *Perpich v. Dept. of Defense*, 496 U.S. 334, 348 (1990). All the moreso if he could act by commandeering state governors and having them do the work of administering his policies in accordance with his wishes. But state Guards are "a hybrid state-federal organization, for the Governor remains in charge of the National Guard in each state except when the Guard is called into active federal service." *Holdiness v. Stroud*, 808 F.2d 417, 421 (5th Cir. 1987).

An injunction here would not disserve the public interest or wade into military matters that are unsuitable for court involvement. *Cf. U.S. Navy Seals 1-26*, 2022 WL 594375 at *8-*10 (5th. Cir. Feb. 28, 2022) (discussing *Mindes v. Seamen*, 453 F.2d 197 (1971)).[2] Rather, an injunction preserving gubernatorial command until Guardsmen are federalized merely preserves the status quo, so that challenged regulations cannot be enforced (with irreversible consequences) pending judicial review. *Cf. Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015). Additionally, "the

---

[2] Each of the *Mindes* factors is satisfied here, to the extent that they are applicable. Plaintiffs allege that the Enforcement Memoranda violate the U.S. Constitution and federal law. No intra-service corrective measures are available. And the four factors all weigh in Plaintiffs' favor: (1) Plaintiffs bring a primarily legal challenge based on clear text; (2) gubernatorial control of state military forces may be forever diminished absent judicial review; (3) no interference with military function is needed, as President Biden has existing avenues available to him to achieve vaccine uptake among military forces; and (4) the legal control of the military, not the exercise of military judgment and discretion, is at issue. Accordingly, this matter is justiciable.

public interest [is] in having governmental agencies abide by the federal laws that govern their existence and operations." *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (internal quotation marks omitted). Allowing the Defendants to denude gubernatorial command over non-federalized Guardsmen is contrary to both the U.S. Constitution and federal law, and they should be enjoined.

## CONCLUSION

The Plaintiffs respectfully request that the Court grant the motion for preliminary injunction and enjoin the Defendants from applying or enforcing the Enforcement Memoranda as to non-federalized Guardsmen.

Date: March 21, 2022.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

Respectfully submitted.

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

*/s/ Christopher D. Hilton*
**CHRISTOPHER D. HILTON**
Chief, General Litigation Division
Texas Bar No. 24087727

**LEIF A. OLSON**
Special Counsel
Texas Bar No. 24032801

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
christopher.hilton@oag.texas.gov
leif.olson@oag.texas.gov

***COUNSEL FOR GOVERNOR ABBOTT***

**TREG R. TAYLOR**
Attorney General of Alaska

**CORI M. MILLS**
Deputy Attorney General of Alaska

*/s/ Christopher A. Robison*
**CHRISTOPHER A. ROBISON**
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

**COUNSEL FOR GOVERNOR DUNLEAVY**

**CERTIFICATE OF SERVICE**

I certify that on March 21, 2022, this document was filed through the Court's CM/ECF system, which automatically serves all counsel of record.

*/s/ Christopher D. Hilton*